IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TERESA C. MANNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 09-843- N |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Plaintiff, Teresa C. Manning, brings this action seeking review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income benefits. This case was transferred (doc. 21) to the undersigned magistrate judge upon the consent of the parties (doc. 19). The parties waived oral argument (docs. 23, 24, 25) and filed supplemental briefs (docs. 16, 17).

Background

Administrative Proceedings

Plaintiff filed for benefits on October 16, 2006. Her claim was denied on January 26, 2007, and an Administrative Law Judge conducted a hearing on her appeal on September 19, 2008. On February 3, 2009, the ALJ issued an unfavorable decision; the Appeals Council denied review on November 30, 2009, rendering the decision final. The instant appeal was timely filed.

Facts[1]

---

[1] The statement of facts is drawn from the decision of the ALJ, the briefs of the parties and from the administrative record.

Plaintiff alleged that she became disabled on August 5, 2006, when she injured her left knee; she filed for benefits on October 16, 2006. However, her prior medical history is relevant to her later claim of disability. As the ALJ made findings based in part on her medical records during this period, the court summarizes the relevant information here.

In November of 2002, Ms. Manning injured her groin at work.[2]

In December 2002, medical records indicate a history of abdominal pain diagnosed as an inguinal hernia and an ovarian cyst. In April 2003, Dr. Burch noted that she was still sore, but there was no obvious inguinal hernia. Dr. Burch suggested that she might have injured her back. Plaintiff was examined in July, 2003, by Dr. Patton, an orthopedist, who noted that she had full strength and non-severe discomfort with hip range of motion. In August 2003, Dr. Patton ordered a lumbar MRI: one report (p. 211) indicated that the MRI showed no significant abnormalities in her back; another report (p. 212) of that MRI states that it showed a subchondral cyst anterior aspect of the right femoral head, but no other significant findings in the right hip. Dr. Patton ordered physical therapy which plaintiff indicated greatly helped with her discomfort.

Dr. Patton referred plaintiff to Dr. Rutledge, who saw her beginning in September, 2003. Dr. Rutledge evaluated plaintiff for pain in her shoulder, hip and groin. In November of 2003, she saw Dr. Rutledge for second opinion on her back pain. He performed a functional capacities examination, rating her at a "medium physical demand level." He diagnosed her with lumbar discogenic pain syndrome, and stated that he believed her to be "currently disabled," citing restrictions from stooping and climbing, and from lifting in excess of 15 to 20 pounds. Also in

---

[2] She filed suit for workers compensation benefits in the Circuit Court of Mobile, Alabama, Civil Action number 03-4112, and received a settlement of $60,000. That settlement was approved by the court on June 17, 2004. According to the order, plaintiff had claimed a permanent total disability at that time.

November, 2003, Dr. Patton stated that plaintiff's groin and low back pain caused no impairment.

In January, 2004, Dr. Rutledge examined plaintiff again, and stated that he rated her "anatomic impairment at 5% of the whole man based on her on-the-job injury. She can probably be retrained within the limits of her FCE but is probably not going to be able to do the repetitive work required of her at" her prior job. Plaintiff continued to see Dr. Rutledge through and beyond the onset date alleged in her application for benefits.

On August 5, 2006, plaintiff dislocated her patella. She opted for surgery to repair a lateral meniscus tear, medial femoral condylar degeneration and a tight lateral retinaculum. By September 2006, Dr. Rutledge reported that plaintiff was progressing well, but in October, 2006, she returned to him, complaining of back pain. Dr. Rutledge concluded that the back pain resulted from her prior injury but that it might have been aggravated by changes in her gait as a result of the knee injury.

The state agency sent plaintiff on a consultive examination with Dr. Thead in January, 2007. Plaintiff complained at that time of back and knee pain, shingles and migraines. She exhibited a markedly abnormal gait, decreased range of motion, crepitus, swelling and tenderness in her left knee, tenderness over her lumbar spine with decreased range of motion. X-rays showed bone rubbing against bone in the left knee. Dr. Thead stated that plaintiff would have difficulty with certain physical work-related activities including sitting, standing, walking, carrying, lifting and traveling.

In March 2007, Dr. Rutledge reviewed x-rays of plaintiff's back, which showed traction spurs and disc space narrowing, and diagnosed her with lumbar spondylosis. Dr. Rutledge saw

plaintiff on August 24, 2007, and noted that she still suffered problems with her knee, that she had some atrophy in the quadricep, and that her knee would occasionally go out.

Plaintiff was examined by a neurologist, Dr. LaCour, in October 2007 for migraines, complaining that they occurred two or three times a week and caused nausea, vomiting, and sensitivity to light and sound.

In January 2008, plaintiff saw Dr. Rutledge for foot pain after twisting her knee. She saw him again in March 2008, for "aggravation of pre-existing discogenic pain." Dr. Rutledge prescribed another epidural for plaintiff, and remarked that she had been given two or three in the prior year with good results.

In May, 2008, plaintiff was prescribed Topamax by Dr. LaCour for her migraines. She later indicated that they helped, reducing the number and severity of her headaches. She stated that she would have one bad migraine per month. In June, 2008, Dr. Rutledge noted that she suffered from back and leg pain that radiated from the lumbo-sacral junction up to the interscapular region.

In August 2008, Dr. Rutledge filled out a physical capacities examination form, stating that plaintiff could sit and stand/walk up to one hour at a time and for four hours in an eight hour day; that she could lift/carry up to ten pounds six hours per day and twenty pounds up to one hour per day; and that she could not bend, squat, crawl or climb, but could reach up to six hours per day. The form indicates that answers are to be based on clinical evaluation and testing, but gives no other explanation of the actual basis for his opinions. He also stated that, though she could use her hands for fine manipulation, she could not use her legs for pushing or pulling. Later in August, Dr. Rutledge obtained an MRI of plaintiff's lumbar spine, which showed mild loss of signal intensity, mild bulging of the disc or annulus at L3-4 and L4-5, mild degenerative

change in the fact joints bilaterally at L3-4, L4-5 and L5-S1, and possible very mild congenital narrowing of the canal at L2-3, L3-4 and L4-5. He prescribed facet block injections.

The hearing before the ALJ was held on September 19, 2008. The ALJ found that plaintiff suffered from the following severe impairments: lumbar and knee joint "changes," depressive disorder, and migraine headaches. The ALJ found that claimant did not meet a "listing" and that she retained the residual functional capacity to perform light work with certain restrictions: that she could not sit or stand/walk for more than one hour at a time or more than four hours in an eight hour day, that she could not operate foot controls, that she can bend or squat only occasionally, cannot crawl, and can only climb stairs with a handrail, and that she can only be in contact with the public occasionally. Based on these findings, the ALJ found her unable to perform her past relevant work as cashier, assistant manager in a retail store and stocker but found that she was not disabled.

## Scope of Judicial Review

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. Washington v. Astrue, 558 F.Supp.2d 1287, 1296 (N.D.Ga. 2008); Fields v. Harris, 498 F.Supp. 478, 488 (N.D.Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. Lewis v. Callahan, 125 F.3d 1436, 1439-40 (11th Cir. 1997); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d

1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence" means more than a scintilla, but less than a preponderance. In other words, "substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. Richardson v. Perales, 402 U.S. 389 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995); Walker, 826 F.2d at 999. With this legal framework in mind, the court now turns its focus to claimant's assignments of error.

## Analysis

Plaintiff claims that the ALJ erred in three ways:

1) by failing to assign controlling weight to the opinion of claimant's treating physician[3] and giving any or controlling weight to the opinion of a non-medical source;

---

[3] Even if Dr. Rutledge's November 2003 opinion, formed after evaluation of the plaintiff but within a few months of beginning to treat plaintiff, qualifies only as the opinion of an evaluating as opposed to treating source, that medical opinion would nonetheless be entitled to greater weight under the regulations than that of a non-examining medical source in the absence of appropriate findings by the ALJ, and, as discussed below, opinions by non-medical personnel are inadequate to counter such medical opinions.

2) by failing to discuss the weight given each medical source in his determination of the claimant's residual functional capacity; and

3) by failing to discuss the weight given to the results of the psychological consultive examination of claimant by Carolyn O'Brien, PhD, and by failing to comply with Social Security Ruling ("SSR") 85-15 in determining claimant's mental limitations.

Social Security Regulation 20 CFR § 404.1527(d) defines how the Administration weighs medical opinions:

> § 404.1527 Evaluating opinion evidence
>
> (d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we will consider all of the following factors in deciding the weight we give to any medical opinion.
>
>> (1) Examining relationship.
>> (2) Treatment relationship.
>> (3) Supportability.
>> (4) Consistency.
>> (5) Specialization. And
>> (6) Other factors.

The regulations further state that the Commissioner will generally "give more weight to opinions from ... treating sources," and "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 404.1527(d)(2), 416.927(d)(2).

> The ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Accordingly, the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).

7

> "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis, 125 F.3d at 1440. However, where an ALJ articulates specific reasons for failing to accord the opinion of a treating physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. Moore [v. Barnhart], 405 F.3d [1208]at 1212 [(11th Cir. 2005)].

Carson v. Commissioner of Social Security, 2010 WL 1544734 at *2 (11th Cir., April 20, 2010).

As noted by the commissioner, the ALJ substantially followed the limitations found by plaintiff's treating physician. The ALJ differed from Dr. Rutledge in holding that, where Dr. Rutledge gave the opinion that plaintiff could not bend or squat, the ALJ found that plaintiff could do so occasionally, and the ALJ rejected Dr. Rutledge's opinion that plaintiff could not climb, particularly the inability to climb stairs with handrails. As support for these differences, made a general, unsupported assertion that "the examination reports of record do not support such extreme limitations." He also cited a single note by Dr. LaCour, a neurologist who saw the plaintiff for migraines, that plaintiff had a normal gait.[4]

The ALJ also pointed to the fact that the MRI report was generated approximately ten days after Dr. Rutledge filled out the PCE form and that it "identified but mild lumbar changes." Dr. Rutledge completed the Physical Capacities Evaluation of plaintiff on August 8, 2008. He had previously performed MRIs and x-rays of plaintiff's lumbar spine and, shortly after his evaluation, received the results of an MRI dated August 18, 2008. That MRI showed further degeneration of several discs as well as facet changes in three discs. Though Dr. Rutledge did

---
[4] Leaving aside the neurologist's lack of focus on plaintiff's orthopedic problems, and the fact that he made only the one note about her gait, the ALJ has not demonstrated a basis in the record to conclude that a normal gait precludes or seriously undermines an expert medical conclusion that the plaintiff can not bend or squat, and could not climb stairs.

8

not have these results when he performed the evaluation, there is nothing in those results that was shown to have been inconsistent with Dr. Rutledge's prior observations or which would have altered or undermined his opinion. There is thus nothing about the MRI which would justify the ALJ's decision to ignore portions of the PCE or to make these specific alterations to the findings in the PCE.

Finally, the ALJ appears to have based his particular findings on a form completed by a lay staff member within the State Agency. In concluding his residual capacity findings, the ALJ summarized the opinion of the consultive examiner, Dr. Thead, as concluding that plaintiff "would have difficulty with sitting, standing, walking, carrying, lifting and traveling," and Dr. Rutledge's opinion as concluding that plaintiff "could lift and carry within the light range of exertion and that she could sit, stand and walk for a combined eight hours in a work day" as well as identifying "postural limitations." He then stated: "[t]he state agency described the claimant as having the ability to perform light work with occasional climbing of ramps and stairs, and occasional bending, stooping, kneeling, crouching and crawling." Though the ALJ does not provide a record citation, this statement apparently refers to a Physical Residual Functional Capacity Assessment form (TR 285-292) completed on August 5, 2007, by Jennifer Hansen, a disability examiner with the state agency.[5]

---

[5]   The ALJ does not expressly acknowledge reliance on this form but cites no other portion of the record which supports or even mentions his particular departures from Dr. Rutledge's PCE. Where the record contains contrary medical evidence, particularly from a treating source, the decision to rely instead on a form completed by non-medical agency personnel constitutes reversible error. *See e.g.* Canfield v. Astrue, 2007 U.S. Dist. LEXIS 96161 (S.D.Ala. October 9, 2007)(rejection of RFC and pain evaluation by treating source, replaced by lay opinion); Cosey v. Astrue, 2008 U.S.Dist. LEXIS 49365 (S.D.Ala. June 25, 2008); Fisher v. Astrue, 2008 U.S.Dist. LEXIS 75900 (S.D.Ala. Sept. 23, 2008); Dixon v. Barnhart, 01-0621-BH-C, Doc. 13, at 5-6 ("This Court has held on numerous occasions that the Commissioner's fifth-step burden simply cannot be met by a lack of evidence or, where available, by the residual functional (Continued)

The ALJ's decision to rely so closely on Dr. Rutledge's findings, yet to alter them to comport with the state agency's findings, is not explained or supported by the portions of the record cited by the ALJ.[6] Because the court finds that plaintiff is entitled to remand on her first ground, the court does not address the remaining assignments of error.

## Conclusion

For the foregoing reasons, it is hereby ORDERED that this action is REMANDED to the Commissioner for further proceedings, pursuant to sentence four, 42 U.S.C. § 405(g).

DONE and ORDERED this 10th day of September, 2010.

        /s/ Katherine P. Nelson
        UNITED STATES MAGISTRATE JUDGE

---

capacity assessment of a non-examining, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician. Such as assessment is particularly warranted where, as here, the ALJ has not only rejected the only RFC assessment in the record completed by an examining physician for an unspecified and inadequate reason but also has made an inappropriate assumption about a comment made by Dixon's treating physician.")).

[6] The court ordered (doc. 15) the parties to supplement their briefs to address whether the requirement of 20 C.F.R. § 404.1520a-(a) was satisfied. The ALJ incorporated the mandated analysis into the written decision, addressing the four broad functional areas of: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation.

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

**Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten [now fourteen] days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

**Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/  Katherine P. Nelson  
UNITED STATES MAGISTRATE JUDGE

11